IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PARK RIDGE SPORTS, INC, an Illinois Not For Profit Corporation,<br><br>    Plaintiff,<br><br> v.<br><br>PARK RIDGE TRAVEL FALCONS, an Illinois Not For Profit Corporation, TIMOTHY WALBERT, JAMES PURCELL, JEFFREY KILBURG, and LOU KARNEZIS, individually,<br><br>    Defendants. | Case No. 20-cv-02244<br><br>Judge Ronald A. Guzman<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION REGARDING MOTION FOR PRELIMINARY INJUNCTION**

The Magistrate Judge's Report and Recommendation ("R&R") is thorough, well-reasoned, and based on a sound interpretation of the facts and applicable law. Defendants respectfully request the Court accept the R&R.

**Standard of Review**

The applicable standard of review supports this Court's acceptance of the R&R. In its objection, Plaintiff cites to *K.P. v. City of Chicago SD*, *#299*, to articulate the standard of review. 2015 WL 832355, at *2 (Case No. 14-cv-07296, N.D. Ill., February 25, 2015) (de novo review.) In that case, this same Court overruled objections to a report and recommendation issued by the very same Magistrate Judge. And that determination resulted in that plaintiff's motion for preliminary injunction being denied. The Court should arrive at the same result here.

I. **THE MAGISTRATE JUDGE APPLIED THE CORRECT LEGAL STANDARD TO FIND PLAINTIFF'S LACK OF TRADEMARK RIGHTS RESULTED FROM PLAINTIFF'S NON-USE OF THE MARK.**

Plaintiff argues the Magistrate Judge used the wrong legal standard to find that Plaintiff does not own a trademark. At best, Plaintiff has constructed a straw man argument. At worst, Plaintiff has misrepresented the Magistrate Judge's analysis. The Magistrate Judge determined, as a *factual* matter, that Plaintiff's purported mark no longer serves to identify its goods or services:

> But the record – including the emails Plaintiff has recently submitted – gives every indication that "Falcons" does not identify Plaintiff's program, it identifies the community's traveling tackle football program; a program Plaintiff no longer offers and one that was merged with Plaintiff's programs for only a brief period from 2015 to 2019. (R&R, p. 14.)

Plaintiff does not challenge the Magistrate Judge's factual findings on this point. Instead, Plaintiff claims the Magistrate Judge is guilty of a "fundamental misunderstanding of trademark law." (Objection, p. 3.) Plaintiff accuses the Magistrate Judge of making a legal mistake where none was made. The Magistrate Judge's legal analysis is perfectly sound; Plaintiff just does not like what the facts show.

More specifically, Plaintiff accuses the Magistrate Judge of inconsistency, arguing that "the Court erred because it required that Plaintiff establish secondary meaning for an inherently distinctive mark." (*Id.* at p. 4). Defendants have no qualms with reading *Two Pesos* to provide that a mark is protectible if it is either inherently distinctive or it has acquired distinctiveness. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); R&R, p. 13. One need not show both. If a court were to require a plaintiff to show – as a requirement for protectability – that an inherently distinctive mark has acquired distinctiveness, that court would be committing a legal error.

But that is not what happened here. The Magistrate Judge did not base Plaintiff's lack of trademark rights on the absence of acquired distinctiveness; the decision was based on Plaintiff's absence of use: "'Falcons' does not identify Plaintiff's program." (R&R, p. 14.) Because the

2

Magistrate Judge applied the appropriate legal standard for trademark ownership, which the Plaintiff has failed to refute, this Court should adopt the R&R.

## II. THE COURT SHOULD ACCEPT THE R&R BECAUSE THE MAGISTRATE JUDGE CORRECTLY EVALUATED THE LIKELIHOOD OF CONFUSION FACTORS.

### A. The Magistrate Judge gave appropriate weight to Plaintiff's *de minimis* purported evidence of actual confusion.

Plaintiff tried to establish actual confusion, but the Magistrate Judge was unimpressed. The Magistrate Judge evaluated Plaintiff's purported evidence of actual confusion by determining they are "not terribly dispositive" and that they "aren't terribly convincing." (R&R, p. 18). The Magistrate Judge found that:

> There is no evidence of confusion stemming from anyone using the name, "Falcons." None! Indeed, the confusion, if any, comes from Plaintiff being less than clear when it did away with the travel team that parents were familiar with and folded it into a house league. (R&R, p. 18.)

And summarized that:

> [i]f there was some confusion, it does not appear to have been driven by the name "Falcons," but rather by Plaintiff's elimination of a long-standing program, and the disruption that has been visited upon just about every aspect of our lives by the coronavirus pandemic. (*Id.* at p. 19.)

*De minimis* evidence of actual confusion is not probative of nor material to the factor of actual confusion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001); *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F. 3d 169, 173 (7th Cir. 1996) (evidence that two consumers were misled by defendant's mark did not create "contestable issue" of likelihood of confusion); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F. 3d 1055, 1060 (7th Cir. 1995) (evidence that three consumers were confused did not demonstrate likelihood of confusion); *Blau Plumbing, Inc. v. SOS Fix-It, Inc.*, 781 F. 2d 604, 610 (7th Cir. 1986) (*de minimis* evidence of actual confusion is insufficient to prove likelihood of confusion).

3

Further, evidence of parties who have not purchased or attempted to purchase goods or services are not relevant "consumers" under the Lanham Act. *Packman*, 267 F.3d at 645; *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F. 3d 633,636-37 (7th Cir. 1999) (plaintiff failed to produce sufficient evidence of actual confusion by relevant group of consumers).

Any evidence that Plaintiff provided in support of actual confusion is *de minimis* and does not create a "contestable issue" of likelihood of confusion. In its opposition, Plaintiff raised only four instances of alleged actual confusion. As demonstrated by the above Seventh Circuit cases, the Magistrate Judge (and this Court) is well within reasonable bounds to find this to be insufficient evidence. What's more, half of Plaintiff's alleged instances of actual confusion did not come from relevant "consumers." Plaintiff alleges that the Pop Warner league and one of Defendants' coaches were confused. Just like in *Packman* and *Syndicate Sales*, the impressions of those individuals, who are not consumers of Plaintiff's services, do not weigh on the issue of actual confusion.

Plaintiff also argues under the heading of actual confusion that the Magistrate Judge erred by "writ[ing] that the confusion between the parties' marks is due to the use of 'Park Ridge' rather than 'Falcons.'" (Objection, p. 6.) The Magistrate Judge did not make such an observation in his discussion of actual confusion. (R&R, p. 14.) But for the sake of completeness, Defendants will address that issue here. The gist of Plaintiff's argument is that the Magistrate Judge should have given greater weight to shared terms that are more distinctive, and less weight to descriptive terms. On this basis, according to Plaintiff, the Magistrate Judge should have emphasized the commonality of the word "Falcons." This argument carries no weight because Plaintiff does no more than state the legal principle, and then *ipse dixit*, claim that the Magistrate Judge should have found differently. Plaintiff does not argue *why* a comparison under this standard leads to a

4

likelihood of confusion. In any event, the point has nothing to do with actual confusion. Because the Magistrate Judge correctly determined there was only *de minimis* evidence of actual confusion, the R&R should stand.

### B. The Magistrate Judge applied the correct legal standard in analyzing any similarity between the marks.

Again, Plaintiff accuses the Magistrate Judge of applying an incorrect legal standard to reach a factual conclusion. But the Magistrate Judge applied the law correctly; Plaintiff just does not like the result. While not articulating the standard, the Magistrate Judge correctly compared the parties' respective marks as a whole, and properly considered marketplace conditions. Courts evaluate the similarity of two marks "in light of what happens in the marketplace, and not merely by looking at the two marks side-by-side." *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 858 (N.D. Ill. 2018), *aff'd*, 926 F. 3d 409 (7th Cir. 2019). The Magistrate Judge properly considered the real marketplace conditions, noting the "huge difference to parents and their sons between a house league – that's what Plaintiff offers, and this Fall it's flag football – and a traveling tackle football team." (R&R, p. 15.) Under this standard, TRAVEL FALCONS and FALCONS are indeed very different, even if the word "travel" is descriptive.

Among athletes who participate in youth sports, there is a clear delineation between those who participate in "travel" teams, and those who participate at less elite levels. Additionally, the word "travel" appearing in Defendants' mark conveys a sense of dynamism or activity that is not present in Plaintiff's mark. Finally, the words comprising Defendants' mark look different when used in connection with Defendants' services because more words comprise the mark. Also, there is a different commercial impression given when one looks at, says, or hears the words comprising Defendants' mark, when compared to Plaintiff's mark. All of these facts and circumstances

5

support the Magistrate Judge's findings when it comes to whether the marks are similar under the likelihood of confusion test.

### C. The Magistrate Judge appropriately considered Defendants' intent.

The Magistrate Judge's order sufficiently addresses Defendants' intent by arriving at the well-founded and correct conclusion that Defendants have no desire to be associated with Plaintiff. The types of services Defendants offer – tackle football at an elite level versus anyone-can-play football – are entirely different. And the parents and players know this.

Plaintiff mischaracterizes the R&R by trying to make it sound like Defendants' primary motivation is to differentiate itself from Plaintiff by being less sensitive to COVID-19 restrictions. (Objection, p. 8). But the Magistrate Judge addressed several other issues in the R&R, led primarily by an observation of how "it cannot be stressed enough, there is a significant difference between a 13-team house league and a travel tackle football team playing rivals from across the northern quarter of the state and into neighboring Indiana." (R&R, pp. 19-20.)

The Magistrate Judge's reasoning on the question of Defendants' intent was conducted carefully and with attention given to appropriate record evidence. Plaintiff complains that the Magistrate Judge did not consider each and every piece of information Plaintiff put forward. But that is not required. See, e.g., *American Dental Ass'n Health Foundation v. Bisco, Inc.*, 1992 WL 107299, *3 (N.D.Ill.1992) (a magistrate judge's failure to articulate his or her reasoning is, by itself, insufficient to require a remand, especially when there is no evidence that the analysis was conducted in anything but a careful manner). Therefore, because the Magistrate Judge appropriately considered, but ultimately rejected, Plaintiff's arguments of Defendants' intent, the R&R was correctly decided.

> **D. The Magistrate Judge appropriately considered the strength of Plaintiff's mark.**

The Magistrate Judge correctly determined that Plaintiff failed to sufficiently support the strength of the mark factor for relevant consumers. In its opposition for this factor, Plaintiff simply rehashes its arguments concerning ownership of the mark. Plaintiff essentially argues that the Magistrate Judge erred in requiring a showing of acquired distinctiveness when the FALCONS mark is inherently distinctive. Again, Plaintiff sets up a straw man argument. When the Magistrate Judge states that "[t]here is no evidence of what the mark means or what people associate it with," the import is not on acquired distinctiveness. (R&R, p. 17.) Indeed, if the Magistrate Judge was ruling that there is no evidence of acquired distinctiveness, the Magistrate Judge could have stated as such in the R&R, as would be customary in trademark law parlance. When the Magistrate Judge writes "[t]here is no evidence of what the mark means or what people associate it with," he means there is nothing remaining of Plaintiff's activity (*i.e.*, no travel football team) with which to associate the FALCONS mark.

> **E. The Magistrate Judge correctly evaluated the issue of sophistication of purchasers.**

The Magistrate Judge correctly determined the sophistication of travel football players and parents in the R&R. Plaintiff claims the Magistrate Judge applied the wrong legal standard to this factor, but Plaintiff supports this argument with a red herring and mere speculation. Rather than be led astray by these tactics, the Court should adopt the Magistrate Judge's careful consideration of actual evidence in the record regarding the sophistication of the relevant purchasers.

Plaintiff's red herring comes in the form of a focus on COVID-19. Plaintiff correctly notes that consumer sophistication should be measured by looking at reasonable and prudent consumers, rather than a limited subset. But then Plaintiff ignores most of the evidence Defendants provided concerning how fanatical many parents and players are about playing in the elite travel leagues

7

(*see, e.g.*, Affidavits of James Brander and James Purcell) and tries to make it sound like parents make the decision only based on COVID-19 guidelines. Plaintiff writes: "While there can be no doubt that some parents who place their children in youth football leagues want their children to participate in a tackle program regardless of the State of Illinois' COVID-19 guidelines, it is quite cynical to suggest that these are all of the consumers of the parties' two programs." (Objection, p. 10.) The care that parents and players exercise in selecting which kind of team to participate has nothing to do with COVID-19 restrictions. The priorities are set by the desire for excellence and to compete at an elite level.

Next, Plaintiff merely speculates that "based on the Plaintiff's lengthy and well known operation of a safe program for more than 50 years, it is certainly plausible that parents who played for Plaintiff's Park Ridge Falcons program when they were children would rely on the name 'Falcons' alone when determining whether to trust a program with their child's safety." (*Id.*) There is simply no shred of evidence in the record to support this assertion.

**F.    The Magistrate Judge properly defined the services offered by the parties.**

The record shows the parties offer two different types of services. Plaintiff offers a house league, "where, as plaintiffs say, anyone can play." (R&R, p. 15.) On the other hand, Defendants offer a travel team, which competes against the best players around the state and country, requires more practice, more parent participation, has higher qualified and paid coaches, and requires tryouts with the possibility that players could be cut. *See, e.g.*, Purcell Affidavit, ¶¶ 4, 11. These differences are significant and impact the decisions that relevant consumers make. The Magistrate Judge considered, but correctly rejected, Plaintiff's attempts to overly simplify this factor. Because the parties offer different services, this factor favors the Court adopting the R&R.

**G. The parties do not use their marks concurrently, and the Magistrate Judge correctly determined that this factor weighed against an injunction.**

Teams in Defendants' league play in many communities, not just in Park Ridge and neighboring towns, where Plaintiff's teams play. The level of concurrent use is relatively low and should weigh against a finding of likelihood of confusion. Purcell Affidavit, ¶ 12. Because the Magistrate Judge correctly determined that Defendants' travel football program is "far reaching," this factor weighs against injunction. (R&R, p. 16.)

**III. THE COURT SHOULD ACCEPT THE MAGISTRATE JUDGE'S DETERMINATION ON IRREPARABLE HARM BECAUSE THE MAGISTRATE JUDGE APPLIED THE CORRECT STANDARD AND MADE THE APPROPRIATE FINDINGS.**

**A. It was appropriate for the Magistrate Judge to reject the presumption of irreparable harm.**

Plaintiff overstates the *stare decisis* effect of Seventh Circuit case law that presumes irreparable harm upon a showing of trademark infringement. The *eBay* case is from the Supreme Court and is binding on all lower federal courts. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). There is nothing inappropriate with a Magistrate Judge deciding an intellectual property case based on a holding from a Supreme Court intellectual property case.

Moreover, as Defendants pointed out in their arguments to the Magistrate Judge, and as the Magistrate Judge observed in the R&R, there is a palpable trend nationwide toward doing away with the presumption of irreparable harm. Even the Seventh Circuit, in *Flava Works, Inc. v. Gunter*, 689 F. 3d 754, 755 (7th Cir. 2012), has held that *eBay* governs a motion for a preliminary injunction in copyright cases. However, even if Plaintiff was to enjoy such a presumption – to which Defendants dispute – Plaintiff failed to present any evidence in support of that presumption. While Plaintiff could have conducted "an extensive canvassing of the community for evidence" or offered market studies to support its claim and to counter Defendants' proffered evidence, Plaintiff merely offered conclusory statements in the form of affidavits that are "strictly in-house,

9

from members of their board." (R&R, p. 21.) Because Plaintiff does not enjoy a presumption of irreparable harm, or failed to properly support it if it did have one, the Magistrate Judge correctly decided the R&R that this Court should accept.

### B. Plaintiff's delay in seeking injunctive relief shows there was no irreparable harm in the first place.

Plaintiff's explanations for waiting almost *three months* to seek injunctive relief do nothing to justify the delay and show there is no irreparable harm. Once again, Plaintiff looks to the COVID-19 pandemic and uncertainty whether any football would be allowed in 2020. What difference would no football in 2020 make to Plaintiff if it was truly concerned that Defendants had begun a new enterprise that would, presumably, still be using a confusingly similar mark when restrictions are lifted? The implication from Plaintiff is that since COVID-19 has stopped its teams from playing, then there is no harm in allowing Defendants to continue using their marks. Surely, that is not what Plaintiffs want to claim. But that is the logical result of Plaintiff's argument.

The same notion undercuts Plaintiff's assertion that it waited to seek injunctive relief because the parties were involved in settlement talks. Plaintiff suggests it would have been "absurdly wasteful" to seek injunctive relief while the parties were negotiating. (Objection, p. 12.) Yet, what is absurd or wasteful about a party going to court and seeking to enforce its legitimate rights? And that fact shows why Plaintiff really was not dealing with an emergency caused by the risk of irreparable harm. If it had been, it would have brought the matter of injunctive relief before the court earlier, to alleviate or prevent the purported harm it claims it was to suffer.

Finally, Plaintiff claims that it "takes little imagination to see how the Defendants' uncontrolled use of the Plaintiff's mark is causing and will continue to cause reputational harm to the Plaintiff." (*Id.* at p. 13.) Despite this assertion, Plaintiff offers nothing about how Defendants' conduct is causing reputational harm. Not a word. Instead, it brings out a parade of potential

10

horribles - possible injury and possible COVID-19 infection from playing for Defendants' team rather than on Plaintiff's teams. These are purely speculative harms without any record evidence in support. Because Plaintiff has not and cannot show irreparable harm, the Magistrate Judge's R&R should be adopted by this Court.

**IV. THE BALANCE OF THE HARMS FAVORS DEFENDANTS AND ACCORDINGLY THE PRELIMINARY INJUNCTION SHOULD BE DENIED.**

Although the Magistrate Judge found that it was unnecessary to balance the harms, Defendants assert that such harms tilt against Defendants. But Defendants have expended a substantial amount of resources to market and promote their football league using the PARK RIDGE TRAVEL FALCONS mark. These efforts have included extensive online advertising, purchase and placement of signs, and other forms of marketing and advertising. Defendants have spent approximately $10,000 to $15,000 in marketing, advertising, and promoting their league under the PARK RIDGE TRAVEL FALCONS mark. (Purcell Aff. at ¶ 10.) If enjoined, these scarce and valuable resources will have been spent in vain.

Similarly, Defendants have expended a great amount of time and energy in the marketing, advertising, and promotion of the football league under the PARK RIDGE TRAVEL FALCONS mark. These resources will all have been wasted if a preliminary injunction is entered. Further, a preliminary injunction would require the Defendants to quickly spend substantial additional time needlessly rebranding and remarketing. Apart from being duplicative, this time would deprive the most important participants in this story of valuable instruction: it would take the Defendants' attention away from the athletes, who would suffer from the lack of guidance from Defendants.

## Conclusion

For all of the above reasons, Defendants respectfully request the Court adopt in its entirety the Magistrate Judge's Report and Recommendation.

Respectfully submitted,

**PARK RIDGE TRAVEL FALCONS, TIMOTHY WALBERT, JAMES PURCELL, JEFFREY KILBURG, and LOU KARNEZIS, Defendants**

By:   /s/ James L. Wideikis
       One of Their Attorneys

James L. Wideikis (ARDC #6278707)
Shawn M. Staples (ARDC # 6293863)
Much Shelist. P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 521-2000

**CERTIFICATE OF SERVICE**

I, James L. Wideikis, an attorney, certify that on September 17, 2020, I electronically filed **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION REGARDING MOTION FOR PRELIMINARY INJUNCTION**, with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:

Richard B. Biagi (rbiagi@nealmcdevitt.com)
Jeffrey T. Norberg (jnorberg@nealmcdevitt.com)
NEAL & McDEVITT, LLC
1776 Ash Street
Northfield, IL 60093

Alexander R. Hernandez (ahernandez@azalaw.com)
John Zavitsanos (jzavitsanos@azalaw.com)
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.
1221 McKinney Street
Suite 2500
Houston, TX 77010

*/s/James L. Wideikis*

11268570