IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARK RIDGE SPORTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 2244 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| PARK RIDGE TRAVEL FALCONS, | ) | |
| TIMOTHY WALBERT, JAMES PURCELL, | ) | |
| JEFFREY KILBURG, and LOU KARNEZIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Park Ridge Sports, Inc. ("Park Ridge Sports") filed objections to Magistrate Judge Cole's Report and Recommendation of August 20, 2020, in which Judge Cole recommended denial of plaintiff's motion for a preliminary injunction. For the reasons explained below, the Court overrules plaintiff's objections, adopts the Report and Recommendation in large part, and denies plaintiff's motion for a preliminary injunction.

**BACKGROUND**

A youth-football squabble gave rise to this action. Plaintiff, Park Ridge Sports, operates a youth-football program in Park Ridge, Illinois. This spring, it decided to eliminate its travel-team division, which required a higher playing level, and continue operating its "house league," which plays only locally. Three members of plaintiff's board of directors (Timothy Walbert, James Purcell, and Lou Karnezis) and a coach (Jeffrey Kilburg) broke away and formed a separate entity and traveling team called Park Ridge Travel Falcons, which has associated itself with the Pop Warner youth-football organization. They filed three federal trademark applications for the marks "Park Ridge Falcons," "Park Ridge Travel Falcons," and "PR Travel

Falcons,"[1] and purchased the domain www.prtravelfalcons.com. Park Ridge Sports alleges that it has operated its program under the name Park Ridge Falcons since 1967, (ECF No. 16, Am. Compl. ¶ 12), and that Park Ridge Travel Falcons, Walbert, Purcell, Karnezis, and Kilburg are infringing on its mark and unlawfully capitalizing on its goodwill. Park Ridge Sports asserts claims against defendants for trademark infringement and false designation of origin in violation of the Lanham Act, violation of the Illinois Deceptive Trade Practices Act, and common-law trademark infringement, and also brings a claim against Walbert, Purcell, and Karnezis for breach of fiduciary duty.

The Court referred plaintiff's motion for a preliminary injunction to Magistrate Judge Cole. After briefing, Judge Cole issued a Report and Recommendation ("R & R," ECF No. 58) recommending that this Court deny the motion. Plaintiff filed objections to the R & R, as provided by Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b).

**DISCUSSION**

Rule 72 instructs the Court to review de novo those portions of the R & R to which plaintiff objects. The Court may "accept, reject, or modify" the R & R, in whole or in part, and may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018) (internal quotation marks and citation omitted). A party seeking a preliminary injunction must show: (1) its claim has some likelihood of success on the merits; (2)

---

[1] On pages 2, 6, and 11 of the Report and Recommendation, Judge Cole referred to the "PR" portion of this term, or the abbreviation "PR," as "Privileged." This reference appears to be a typographical error.

traditional legal remedies would be inadequate; and (3) it will suffer irreparable harm in the interim period before final resolution of its claims if preliminary relief is not granted. *Id.* If the movant satisfies these requirements, then the court must weigh the possibility of irreparable harm to the nonmovant if the relief is granted, versus the irreparable harm the movant will suffer if the relief is denied. *Id.* at 966. This is a "sliding scale" analysis; the more likely the plaintiff is to succeed on the merits, the less the balance of harms needs to weigh in its favor. *Id.* Where appropriate, the court also considers the public interest in granting or denying the injunction. *Id.*

Plaintiff seeks preliminary injunctive relief on its trademark-infringement claims. In a trademark-infringement suit, the plaintiff must show that it has acquired protectable rights in a trademark and that the challenged mark is likely to cause confusion among consumers. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). Where, as here, an identifying term claimed as a trademark is not registered with the United States Patent and Trademark Office, the burden is on the claimant to establish that the mark is entitled to protection under § 43 of the Lanham Act. *See Baig v. Coca-Cola Co.*, 607 F. App'x 557, 559 (7th Cir. 2015) (citing *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998)). This determination is made on a case-by-case basis, considering the totality of the circumstances. *Johnny Blastoff*, 188 F.3d at 433. "A party may acquire a protectable right in a trademark only through use of the mark in connection with its product." *Id.* "The party seeking to establish appropriation of a trademark must show first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 433-34 (internal punctuation and citation omitted).

Plaintiff raises several objections to the R & R. First, plaintiff argues that Judge Cole used "the wrong legal standard to determine ownership" and "appear[ed] to conflate ownership and protectability by requiring Plaintiff to establish secondary meaning as a proxy for ownership of the mark itself." (ECF No. 61, Pl.'s Objs. at 2.) The Court disagrees. Judge Cole properly found that plaintiff's mark is arbitrary and therefore inherently distinctive, and that plaintiff thus need not prove secondary meaning. But the question of distinctiveness is separate from that of use, *Viacom International v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 186 (5th Cir. 2018), to which plaintiff gives short shrift. Plaintiff's evidence of adoption and use is woefully lacking, and, as Judge Cole noted with respect to plaintiff's presentation of the facts, marked by "sketchiness and obfuscation." (R & R at 6.) For the proposition that plaintiff "has established that it has used the PARK RIDGE FALCONS mark in commerce for more than 50 years by operating a program that competed both within Illinois and in various other states," (ECF No. 42-1, Pl.'s Mem. Supp. Mot. Prelim. Inj. at 9), plaintiff relies *exclusively* on a single sentence in the declaration of James Toulon, who has served as president of Park Ridge Sports' board of directors for just three years, who states that "Park Ridge Sports has for its entire existence [since 1967] operated a youth tackle football program under [the] name PARK RIDGE FALCONS," (ECF No. 42-10, Decl. of James Toulon ¶ 4.) As Judge Cole observed, "[i]t's not clear how he knows this." (R & R at 4.)

Furthermore, as discussed in the R & R, plaintiff itself submitted a Chicago Tribune article indicating that historically, there were two separate youth-football programs in Park Ridge—plaintiff's house league, Park Ridge Football, which was made up of teams within the Park Ridge community that played each other, and the traveling Park Ridge Falcons team, which played teams from other communities. Defendants' declarations support this finding. Perhaps

4

that is why plaintiff in its reply brief took the position that to the extent the submissions created a factual dispute, an evidentiary hearing was required, but then eschewed such a hearing and stood on its argument that it had used the mark at least since 2015. Given a chance to bolster its contested claim that it has used the mark since 1967, plaintiff declined. Plaintiff now contends that whether its use began in 1967 or 2015 does not matter because it has established an earlier use than that of defendants. Plaintiff overlooks, however, that it failed to offer evidence that it used the Park Ridge Falcons mark in a way that was "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark," *Johnny Blastoff*, 188 F.3d at 433-34—in other words, as plaintiff's own mark. Judge Cole was entirely correct when he found that the evidence is that "'Falcons' does not identify plaintiff's program, it identifies the community's traveling tackle football program; a program plaintiff no longer offers and one that was merged with plaintiff's programs for only a brief period from 2015 to 2019." (R & R at 14.)

Plaintiff also contends that Judge Cole misapplied the likelihood-of-confusion factors. In trademark-infringement cases, the Seventh Circuit uses the following seven factors to determine the likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) evidence of actual confusion; and (7) the intent of defendants to "palm off" their product as that of another. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). No single factor is dispositive, but three are particularly important: actual confusion, the similarity of the marks, and defendants' intent. *Barbecue Marx*, 235 F.3d at 1043-44.

Plaintiff maintains that Judge Cole improperly disregarded its evidence of actual confusion. Judge Cole determined that plaintiff's evidence was "not terribly dispositive," in light of its sources and context. (R & R at 18.) Plaintiff offered the declaration of Mel Thillens, one of its board members, who relates a story about a Park Ridge Sports flag-football coach who expressed surprise that the Park Ridge Travel Falcons were not part of plaintiff's programs. Plaintiff also cited a link on Pop Warner's website for the Park Ridge Travel Falcons that actually directed visitors to plaintiff's website. And plaintiff submitted along with its motion two emails that were forwarded to Matt Colleran, another member of its board, by Colleran's wife. In one email, someone from a local youth-wrestling program, in which Colleran's wife is involved, sent her a link to a Chicago Tribune article about the instant lawsuit and asked, "Are we promoting the right P[ark] R[idge] team?" In the other, a friend of Colleran's wife said she was confused by the two Falcons websites and asked whether she should sign her son up on the Park Ridge Football website or the Park Ridge Travel Falcons website. (ECF Nos. 42-17 & 42-18.) Along with its reply brief, plaintiff also submitted an email from a mother requesting a refund because she had mistakenly signed her son up for the "wrong league" (the email does not explain the reason for the mistake); an email from a father who said he was "very confused" upon discovering that Park Ridge Sports was conducting only flag football this year, and who asked about the nature of the travel program that would be playing in Indiana and whether that play would be tackle football; another email from the same father, who asked the vice president of plaintiff's board whether "you guys [are] playing tackle" football in Indiana this year; an email from a father who said that he had registered his son for "falcons travel tackle football," had attended a preview session for the travel Falcons team coached by defendant Kilburg, and was confused about what league they had registered for; and an email from a mother who stated

6

that she believed she had signed her son up for the wrong Falcons team in that he had wanted to play Pop Warner football. (ECF Nos. 53-3, 53-4, 53-8, 53-6, & 53-7.)

Judge Cole found that plaintiff's evidence essentially shows that there is a group of parents accustomed to travel tackle football who want their sons playing that version of the sport, plaintiff can no longer accommodate them because it does not offer travel or tackle football, and any existing confusion is due to the fact that plaintiff was less than clear when it eliminated its travel team and folded it into its house league and continued to advertise on its website even as of late August for a Falcons travel tackle football program that was to begin on August 4 (which it did not operate). Plaintiff, on the other hand, contends that it provided "far more evidence" of actual confusion "than is usually available in trademark cases," and that Judge Cole erred in saying that there is no evidence of confusion whatsoever from anyone's use of the name "Falcons." (Pl.'s Objs. at 5.)

"[E]vidence of actual confusion must refer to the confusion of reasonable and prudent consumers," *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 729 (7th Cir. 1998), so Judge Cole was correct to disregard the evidence pertaining to Pop Warner, promotional concerns, and a coach's communications. The Court agrees with plaintiff that there is *some* evidence of consumer confusion stemming from the use of the name "Falcons,"[2] but not all of the emails demonstrate confusion on that basis; in some of the emails, the reason for confusion is not apparent. Plaintiff's relevant evidence boils down to a couple of

---

[2] Accordingly, the Court so modifies that portion of the R & R in which Judge Cole concluded that there is no such evidence.

7

emails from parents,[3] which is de minimis—certainly not "far more" than usual in trademark cases. Judge Cole gave appropriate weight to plaintiff's evidence of actual confusion.

Next, plaintiff objects to Judge Cole's conclusion that the similarity-of-marks factor is neutral in the analysis. Judge Cole reasoned that although there is little doubt that the parties' marks are similar, in this particular context, the addition of the word "travel" makes a significant difference because a house league offering flag football and a travel league offering tackle football are two very different products. According to plaintiff, the word "travel" is "informational" only, whereas "shared inherently distinctive features," such as the term Falcons, "are more likely to dominate consumer perception." (Pl.'s Objs. at 7.) These may be general principles, but Judge Cole found that on this record, the salient portion of the mark is the word "travel." Given that "we must compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side," *Sorensen*, 792 F.3d at 726 (brackets omitted), the Court finds no fault with Judge Cole's conclusion.

Plaintiff also argues that Judge Cole "failed to consider evidence of intent." (Pl.'s Objs. at 8.) Plaintiff says that Judge Cole should have discussed its evidence that defendants were previously involved in plaintiff's program and knew of plaintiff's use of the Falcons mark and that defendants "repeatedly used photographs" of plaintiff's past Falcons teams on defendants' website. According to plaintiff, the use of the photographs suggests that defendants are "claiming" plaintiff's 2019 team "as their own, to mislead Park Ridge parents into believing that their Falcons offering is the same offering Plaintiff has provided for years." (*Id.*) While Judge Cole did not expressly discuss the photographs (and is not required to discuss every piece of evidence), he addressed this argument and rejected it. Judge Cole reasoned that the record shows

---

[3] Like Judge Cole, this Court does not put stock in the emails circulated among the plaintiffs' directors' clique.

that defendants in fact do not want to pass off their product as having come from plaintiff and its house league, and observed that the use of the term "Falcons" appears to stem not from an intent to deceive, but from laziness. *See* R & R at 2, 24 (remarking that defendants are "no slouches in the lack of creativity and originality department").

The Court has reviewed plaintiff's objections to Judge Cole's analysis of the remaining likelihood-of-confusion factors, along with the evidence, and overrules them. None merits additional discussion. The Court concurs with Judge Cole that plaintiff's likelihood of succeeding on the merits is "not very good." (*Id.* at 20-21.)

Plaintiff next takes issue with Judge Cole's irreparable-harm analysis. Judge Cole declined to apply the traditional presumption of irreparable harm in trademark-infringement cases, explaining that the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-94 (2006), made clear that this presumption does not exist in the patent context, and that the Seventh Circuit relied on *eBay* to hold in *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), that irreparable harm is no longer presumed in copyright-infringement cases.[4] Plaintiff argues that "the presumption remains as a matter of *stare decisis*" in trademark-infringement cases because the Seventh Circuit has not yet considered the issue. (Pl.'s Objs. at 11.) The Court disagrees. The Seventh Circuit itself stated in *Flava Works* that it was persuaded "that *eBay* governs a motion for a preliminary injunction in a copyright case," even though *eBay* "was a case about patents rather than copyrights." 689 F.3d at 755. As some of this Court's colleagues have concluded, there appears to be no reason (and plaintiff has not suggested) why the Seventh Circuit would reach a different conclusion in the trademark-infringement context.

---

[4] Thus, Judge Cole did not, as plaintiff claims, "declare[] the presumption dead without any analysis." (Pl.'s Objs. at 12.)

*Health King Enter., Inc. v. Dalian Health King Prods. Co.*, No. 19 C 1878, 2020 WL 1201533, at *3 n.4 (N.D. Ill. Mar. 12, 2020); *Ill. Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2019 WL 4395139, at *19 (N.D. Ill. Sept. 13, 2019).

Plaintiff also maintains that Judge Cole erred in determining that its showing of irreparable harm was not strong. Judge Cole found that the nearly three-month delay from plaintiff's filing of this suit to the filing of its motion for a preliminary injunction undermined its claim of irreparable harm, especially given plaintiff's presentation, which consisted merely of the affidavits of plaintiff's board members, the aforementioned emails and articles, and screenshots. Plaintiff says that it had "very good reasons" for its delay: "settlement discussions and a worldwide pandemic that called into question whether *any* sporting activities . . . would even happen in 2020." (Pl.'s Objs. at 12.) The Court is unpersuaded. The argument is in tension with plaintiff's assertion that defendants' uncontrolled use of plaintiff's mark is causing reputational harm to plaintiff. The temporary lack of play and the existence of settlement discussions did not prevent defendants' use of the purportedly confusingly similar mark in the meantime. Furthermore, plaintiff's argument about reputational harm is without support. Plaintiff asserts that defendants "have elected to ignore the state's COVID-19 rules and take their practices and games out of state" and that confused consumers will "attribute Defendants' unsafe actions to Plaintiff," (*id.* at 1, 13), but failed to submit any evidence supporting these propositions. This Court agrees with Judge Cole that, on the record before the court, plaintiff failed to establish that it will be irreparably harmed if an injunction does not issue.

Plaintiff's final argument is that because Judge Cole's irreparable-harm analysis was erroneous, so was his analysis regarding the balance of the harms. The Court has rejected the former argument, so it rejects the latter. The Court must add, though, that its review of the

10

record leaves it with the same impression as Judge Cole—this action is rooted in a personal rivalry. While plaintiff has not made the requisite showing to obtain a preliminary injunction, at the same time it would not seem terribly harmful for defendants to operate under a different name. The parties are urged to set their hostilities aside and see if they can reach a resolution that would conserve judicial economy and avoid further litigation expenses.

## CONCLUSION

The Court agrees with Magistrate Judge Cole that, on the record before the court, plaintiff failed to make the requisite showing to obtain preliminary injunctive relief. The Court overrules plaintiff's objections to Magistrate Judge Cole's Report and Recommendation [58], adopts the Report and Recommendation with the exception of the typographical error noted by the Court in footnote 1 and the modification described in footnote 2, and denies plaintiff's motion for a preliminary injunction [42].

**DATE:** October 23, 2020

**Hon. Ronald A. Guzmán**
**United States District Judge**