IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PARK RIDGE SPORTS, INC.,** | ) | |
| an Illinois Not For Profit Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2244 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| **PARK RIDGE TRAVEL FALCONS,** | ) | |
| an Illinois Not For Profit Corporation, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff has filed a motion for a protective order to prevent the production of documents requested in the non-party subpoena issued by defendants Park Ridge Travel Falcons, Timothy Walbert, James Purcell, Jeffrey Kilburg, and Lou Karnezison, on October 29, 2020, to JPMorgan Chase Bank, N.A. For the following reasons, the motion [Dkt. #76] is granted and the subpoena is quashed.

Formally, this is a case about youth football teams in Park Ridge, using the name "Falcons" and the accompanying logo, taken from the NFL franchise. It began with a split among the community's football fathers over the direction of the program, with one side suing the other for trademark infringement. But at its core it is clear to more than one objective observer that it is little more than a personal spat among the football fathers of Park Ridge. [Dkt. #68, at 10-11].

Underscoring the seemingly personal nature of the dispute, a couple of the football father defendants, angry at being sued for trademark infringement, retaliated with a counterclaim alleging

they made "restricted" donations of $2600 in 2017 to 2019, and $50,000 in 2019, to plaintiff's youth football program that plaintiff had to spend on helmets, jerseys, and football equipment. Defendants claim the plaintiff did not spend the money on football equipment. [Dkt. #39]. They have subpoenaed plaintiff's bank for all bank transaction records dating back to January 1, 2014. That subpoena is improper on a number of levels.

## ARGUMENT

### A.

First, it should be noted that the counterclaim asserts that the court has jurisdiction over the donation dispute under 28 U.S.C. § 1367(a). [Dkt. #39, Par. 4]. "[C]ourts must investigate the existence of jurisdiction *sua sponte* if the parties fail to address it." *Sroga v. Laboda*, 748 F. App'x 77, 78 (7th Cir. 2019). *See also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593, (2004); *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 768 (7th Cir. 2013). Under §1367(a), a court is permitted to exercise supplemental jurisdiction over any claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019). To assess whether supplemental jurisdiction exists, "[c]ourts often ask whether the claims share a common nucleus of operative facts." *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018). "A loose factual connection between the claims is generally sufficient." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). "So, for example, supplemental jurisdiction is appropriate when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction." *Prolite*, 891 F.3d at 258. Aside from the fact that the parties involved in the donations lawsuit are also involved in the Lanham Act case, it is difficult to see how the donation

dispute has anything to do with the trademark action, other than the likelihood it was filed as a reprisal. In fact, the counterclaim stems from donations and purchases of football equipment occurring up to three years before the football fathers split up and went their separate ways, which, of course, is when the Lanham Act claim arose. The facts of one claim have nothing to do with the facts of the other.

While it is a question for Judge Guzman and not me, the basis for jurisdiction folds into my decision regarding the defendants' subpoena.[1] Discovery, whether by subpoena or requests to produce documents, has to be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). *See Generations Brands, LLC v. Decor Selections, LLC*; 2020 WL 6118558, *4 (N.D.Ill. 2020); *Buonavolanto v. LG Chem, Ltd.*, 2019 WL 8301068, at *3 (N.D. Ill. 2019). A sweeping subpoena for *all* bank transaction records over the course of seven years does that is tied to a claim that has nothing to do with the main claim and over which the court likely does not have jurisdiction – or certainly need not *exercise* jurisdiction – does not fare well under the "proportionality" test.

---

[1] Also for Judge Guzman, potentially, is the question of whether the plaintiff used the donations as intended. Plaintiff spends a fair portion of its motion arguing that it has proven it spent the money on football equipment, and submits about 80 pages of evidence about its spending and football equipment and, for some unknown reason, a number of exhibits that have absolutely nothing to do with this discovery motion. [Dkt. #76, at 3-4, 5-6]. But a discovery motion is not a vehicle to prove or disprove claims. Whether plaintiff spent the money on football equipment and whether plaintiff can prove it is a summary judgment issue at best. Until plaintiff properly challenges the counterclaim with its evidence, it is part of this case and plaintiff will have to produce some discovery regarding it – just not unlimited amounts, however.

Indeed, it is egregiously out of proportion to claim that it is ostensibly about a couple of donations in 2017, 2018, and 2019. In their response brief – that included *over 200 pages of exhibits*[2] – the defendants contend that their requests are relevant not only to their donation claims, but to their defenses to plaintiff's Lanham Act claim. [Dkt. #81,at 5]. They explain:

> Specifically, the [defendants] have alleged that prior to 2015, Park Ridge had two separate youth football teams: a house league run by [plaintiff] and an independent and autonomous travel football team known as the Falcons. Therefore, financial records from [plaintiff's] Chase bank account before the year 2015 are highly relevant. If, in fact, there are no financial transactions relating to travel football in 2014, that would further support James Brander's previously supplied affidavit regarding the prior independence of the Falcons travel team. [Docket No. 52-1, Ex. A.]

[Dkt. #81, at 4]. The defendants' explanation, however, does not withstand scrutiny.

First, where did the defendants make the allegation regarding 2015? The defendants offer no citation to either of their pleadings. Review of their amended counterclaim [Dkt. #39] reveals no such allegation. Second, accepting for the sake of argument that spending – or lack thereof –

---

[2] Defendants were clearly led down the summary judgment path by plaintiff's original submission and took it from the not sublime at all, to the ridiculous. Given the present discovery dispute, what is one to make, for example, of an upside down photo of a youth football team, called the Midget Cardinals, accompanied by an advertisement for Manor Tool and Manufacturing?

Not to be outdone in the art of "piling on," the plaintiff's Reply Brief [Dkt. #82] comes with *350 pages* of exhibits. These include over 250 pages of programs and photos dating back to 1965 [Dkt. #82-3,4,5], emails and tax returns from 2006 and 2007 [Dkt. #82-6,9], and a budget from 1982. [Dkt. #82-8]. So little of the materials plaintiff submitted have to do with the discovery dispute at hand – which has to do with documents from 2014 on – that to sift through the mess the plaintiff filed to search for pertinent material is to search for needles in a haystack. But judges are not permitted to do this. They are not to play archaeologist with the record. *See DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). *See also United States v. Sineneng-Smith,* _U.S._, 140 S.Ct. 1575, 1579 (2020); *Bunn v. FDIC*, 908 F.3d 290, 297 (7th Cir. 2018). *See also* cases cited *infra* at 4-6.

Perhaps worse, or perhaps just in keeping with plaintiff's overall strategy – only briefly exhibited in their opening motion – most of plaintiff's reply brief addresses substantive disputes that can only be resolved in a motion for summary judgment, if at all. [Dkt # 82, at 4-10].

relating to travel football in 2014 might be relevant, that says nothing about the relevance of *all* bank transactions *thereafter*, especially those in 2015 and 2016. Third, is a "fishing expedition" for *all* bank transactions in 2014 worth it to support an affidavit about travel football submitted in a proceeding – the preliminary injunction proceeding – that has concluded? The answer is no, especially since Judge Guzman, in his ruling, made no reference to the affidavit and no mention of 2014. [Dkt. #68, at 5]. And, let us not forget that "fishing expeditions" are still prohibited. *EEOC v. CVS Pharmacy, Inc.*, 907 F.3d 968, 976 (7th Cir. 2018); *EEOC v. Union Pac. R.R. Co.*, 867 F.3d 843, 852 (7th Cir. 2017).

Obviously, there were ways for defendants' counsel to draft a targeted subpoena but they went another way. Counsel in this case do not have to have the precision of Aaron Rodgers, but they have to do better than the many journeymen quarterbacks who have started for the Bears during his tenure. Perhaps counsel made excessively broad, over-focused demands due to the seeming animosity between the parties; perhaps not. But, in any event, the end result is that the subpoena is too sweeping and must be quashed; simply put, the court cannot and will not redraft defendants' counsel's discovery requests; that is not a court's responsibility. Indeed, it is improper that it do so. In addition to the cases cited in n.2, *supra*, *see Copeland v. C.A.A.I.R., Inc.*, 2020 WL 972754, at *5 (N.D. Okla. 2020); *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2019 WL 7496775, at *3 (D. Haw. 2019); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *5 (E.D.N.Y. 2017); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 13238450, at *4 (D. Nev. 2015); *Heim v. BNSF Ry. Co.*, 2014 WL 6949044, at *9 (D. Neb. 2014); *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 398 (D. Del. 2012); *Primm v. Aerofil Tech., Inc.*, 2012 WL 13102523, at n.4 (M.D. Fla. 2012); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *8 (D. Colo. 2010); *Dombach v.

*Allstate Ins. Co.*, 1998 WL 695998, at *7 (E.D. Pa. 1998). Indeed, it is patently unfair for the court to help one side to the detriment of the other. *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011)("it is not a judge's job to assist one advocate at another's expense."); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)(a court cannot "in practical effect, . . . become[] the lawyer for the [plaintiff], performing the lawyer's duty . . . .").

**B.**

Some additional points need to be made. When plaintiff's counsel filed this motion, he included a terse Local Rule 37.2 certification saying only that "on November 5, 2020 and via telephone, I engaged in a good-faith effort to confer with counsel for Defendants regarding the relief requested herein. Defendants are opposed." [Dkt. # 74, at 10]. I pointed out that the certification did not fully comply with the Local Rule [Dkt. #75], and plaintiff's counsel then said:

> Counsel for Plaintiffs and counsel for Defendants were unable to reach an accord. Specifically, counsel for Plaintiffs and counsel for Defendants fundamentally disagreed on whether the evidence already produced by Plaintiffs provides the evidence necessary to demonstrate the use of the donations. Counsel for Plaintiffs maintained that the non-party subpoena to Chase Bank was unnecessary because the evidence produced by Plaintiffs shows that the donations were used to purchase football helmets, equipment, and jerseys. Counsel for Defendants disagreed, contending that the bank records requested in the non-party subpoena to Chase Bank were necessary to show how the donations were spent.

[Dkt. #76, at 10].

Defendants' counsel had a slightly different take on the parties' "meet and confer" obligations, claiming that "at no time did [plaintiff] propose to narrow the scope of the requests in order avoid filing the motion for a protective order. Rather, [plaintiff] simply inquired whether the Travel Falcons would agree to the motion for a protective order or not." [Dkt. #81, at 6]. It's not exactly *Rashomon*, but it provides some insight into the way the attorneys in this case are operating,

and it is not in the good faith the Local Rule demands. Plaintiffs' counsel took a stance and refused to budge. Defendants' counsel did the same and did not even raise the argument about relevance to travel football. In other words, *neither* side's counsel obeyed the Local Rule's directive to negotiate *in good faith*. See N.D.Ill. Local Rule 37.2.

"Good faith" has meaning; it is not evidenced by parties "adamantly clinging to the positions with which they began." *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016); *see also Generation Brands, LLC v. Decor Selections, LLC*, 2020 WL 6118558, at *3 (N.D. Ill. Oct. 16, 2020); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958–59 (N.D. Ill. 2018)("Chatting for a bit about a dispute and maintaining an untenable position at worst or a tenuous position at best, is not engaging in a good faith meet and confer."). Given the parties' non-compliance with the Local Rule, any future discovery motions must include a Local Rule 37.2 certification that complies with the requirements of *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 2007 WL 2713352 (N.D. Ill. 2007)(motion must contain a detailed, joint statement of the parties' efforts to resolve their disputes over each of the document requests at issue, along with their final positions, supported by pertinent authority, on each request that remains in dispute). Motions that fail to comply will not be considered, as the Local Rule says.

Moreover, given what the parties have filed on a simple discovery dispute in a case that is neither an antitrust case nor a complex patent infringement case, any future briefs in which materials extraneous to the issue at hand are appended will be stricken. Fed.R.Civ.P. 12(f)("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter. The court may act . . . on its own). As case after case has held, counsel in a discovery dispute are not to use the briefing as vehicles to snipe at the other side. A court is not obliged to sift through mountains of extraneous or irrelevant material in the hope of discovering something that might be pertinent to the motion at hand. *See Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019); *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015). A party stubbornly continuing along such lines is likely to "snatch defeat from the jaws of victory." *In re Aiken Cty.,* 645 F.3d 428, 438 (D.C. Cir. 2011).

One further point, and it goes to the idea of proportionality – if not the proportionality envisioned by Fed. R.Civ.P. 26(b)(1), then the proportionality that ought to underlie all things, especially in challenging times. This case falls somewhere in the spectrum between *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987)(quoting 1 Jessup, Elihu Root 133 (1938)) and *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 266 (N.D. Ill. 1979)("The 'best' case can be lost and the 'worst' case can be won . . . ."). The discovery motion just filed, and to a much greater extent the nearly 600 pages of response and reply briefs and exhibits, are all anyone needs to be convinced that the parties and their counsel in this case have taken matters completely out of proportion with the issues the football fathers claim to be litigating. Whether a youth football team takes its name and logo from the NFL franchise in Atlanta or the one in Arizona or elsewhere is likely of little concern to the children participating in the football program and their parents. A few weeks before the current discovery squabble arose, Judge Guzman urged the "parties . . . to set their hostilities aside and see if they can reach a resolution that would conserve judicial economy and avoid further litigation expenses." [Dkt. #68, at 11]. That was sage advice that the combatants would be wise to take to heart.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/24/20